# EXHIBIT 2

# LARSON · KING

**T. JOSEPH SNODGRASS**
Direct Dial: (651) 312-6510
E-Mail: jsnodgrass@larsonking.com
Web: www.larsonking.com

June 26, 2014

**VIA EMAIL AND U.S. MAIL**

Todd Noteboom
Stinson Leonard Street LLP
150 S 5th Street
Suite 2300
Minneapolis, MN 55402
todd.noteboom@stinsonleonard.com

     Re:   *Brent R. Wilcox and Leah S. Wilcox v. State Farm Fire and Casualty Company*
          Our File No.: 2-437-0001

Dear Mr. Noteboom:

    Enclosed and served upon you via email and U.S. Mail in the above-referenced matter please find the Notice of Service of Process with the attached Summons and First Amended Complaint, pursuant to Minn. Stat. §§ 60.19 and 45.028.

    Very truly yours,

LARSON · KING, LLP

T. Joseph Snodgrass

TJS:bf
Enclosures
1405597v2

STATE OF MINNESOTA

COUNTY OF DAKOTA

DISTRICT COURT

FOURTH JUDICIAL DISTRICT

Case Type:  Other Civil

---

BRENT R. WILCOX and LEAH S. WILCOX,
individually and on behalf of all others similarly
situated,

        Plaintiffs,

vs.

STATE FARM FIRE AND CASUALTY COMPANY,

        Defendant.

Case No. _____

**NOTICE OF
SERVICE OF PROCESS**

---

TO:  DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY, AND ITS ATTORNEYS:

**YOU WILL PLEASE TAKE NOTICE** that on the 26th day of June, 2014, the attached Summons and First Amended Complaint has been duly served upon the Minnesota Commissioner of Commerce, as your agent to receive service of process pursuant to Minn. Stat. § 60A.19, subd. 1, 3, and 4, and Minn. Stat. § 45.028, subd. 2.

Your Answer to this Summons and the First Amended Complaint is accordingly due 20 days from the date of service.

Dated:  June 26, 2014

**LARSON · KING, LLP**

By _T. Jn S_____

    T. Joseph Snodgrass (MN #231071)
    Shawn M. Raiter (MN #240424)
    Kelly A. Lelo (MN #330838)
2800 Wells Fargo Place
30 E. Seventh Street
St. Paul, MN  55101
Tel:  (651) 312-6500

***Attorneys for Plaintiffs and Putative Class
Representatives***

1405568v2

STATE OF MINNESOTA

COUNTY OF DAKOTA

DISTRICT COURT

FOURTH JUDICIAL DISTRICT

Case Type:  Other Civil

---

BRENT R. WILCOX and LEAH S. WILCOX,
individually and on behalf of all others similarly
situated,

        Plaintiffs,

vs.

STATE FARM FIRE AND CASUALTY
COMPANY,

        Defendant.

Case No. _____

**SUMMONS**

---

THIS SUMMONS IS DIRECTED TO THE ABOVE- NAMED DEFENDANT:

    YOU ARE BEING SUED.  The Plaintiffs have started a lawsuit against you.  The Plaintiffs' First Amended Complaint against you is attached to this Summons.  Do not throw these papers away.  They are official papers that affect your rights.  You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this Summons.

    YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.  You must give or mail to the person who signed this Summons a written response called an Answer within 20 days of the date on which you received this Summons.  You must send a copy of your Answer to the person who signed this Summons located at:

        LARSON • KING, LLP
        30 East Seventh Street, Ste. 2800
        Saint Paul, MN  55101

    YOU MUST RESPOND TO EACH CLAIM.  The Answer is your written response to the Plaintiff's First Amended Complaint.  In your Answer you must state whether you agree or disagree with each paragraph of the First Amended Complaint.  If you believe the Plaintiff should not be given everything asked for in the First Amended Complaint, you must say so in your Answer.

YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE FIRST AMENDED COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS. If you do not Answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiffs everything asked for in the First Amended Complaint. If you do not want to contest the claims stated in the First Amended Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the First Amended Complaint.

LEGAL ASSISTANCE. You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.

ALTERNATIVE DISPUTE RESOLUTION. The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the First Amended Complaint even if you expect to use alternative means of resolving this dispute.

Dated: June 26, 2014

**LARSON · KING, LLP**

By _____

      T. Joseph Snodgrass (MN #231071)
      Shawn M. Raiter (MN #240424)
      Kelly A. Lelo (MN #330838)
2800 Wells Fargo Place
30 E. Seventh Street
St. Paul, MN  55101
Tel:  (651) 312-6500
Fax:  (651) 312-6618

***Attorneys for Plaintiffs and Putative Class Representatives***

## Acknowledgment

The undersigned hereby acknowledges that costs, disbursements and reasonable attorney and witness fees may be awarded pursuant to Minn. Stat. §549.211, to the party against whom the allegations in this pleading are asserted.

_____

T. Joseph Snodgrass (MN#231071)
Shawn M. Raiter (MN #240424)
Kelly A. Lelo (MN#330838)

1405561v2

2

STATE OF MINNESOTA

COUNTY OF DAKOTA

DISTRICT COURT

FOURTH JUDICIAL DISTRICT

Case Type:  Other Civil

---

BRENT R. WILCOX and LEAH S. WILCOX,
individually and on behalf of all others similarly
situated,

        Plaintiffs,

vs.

STATE FARM FIRE AND CASUALTY
COMPANY,

        Defendant.

Case No. _____

**FIRST AMENDED COMPLAINT**

**DEMAND FOR JURY TRIAL**

---

Comes now Plaintiffs Brent R. Wilcox and Leah S. Wilcox, individually and on behalf of all others similarly situated, and for their First Amended Complaint against Defendant State Farm Fire and Casualty Company, state and allege the following:

## PARTIES

1.      Plaintiffs are husband and wife residing at 4348 Hamilton Drive, Eagan, Minnesota.

2.      Defendant State Farm Fire and Casualty Company ("State Farm") is an Illinois corporation conducting business in the State of Minnesota.

## FACTUAL BACKGROUND

3.      Plaintiffs contracted with State Farm for an insurance policy providing coverage for certain losses to a dwelling and other structures owned by Plaintiffs located at 4348 Hamilton Drive, Eagan, Minnesota.

4.      At all times relevant to this action, Plaintiffs' property was insured under State Farm Policy No. 23-GW-2965-8.

5.      On August 6, 2013, Plaintiffs suffered storm damage to their dwelling.   They timely submitted a claim to State Farm requesting payment for their covered loss.

6.      On or about September 6, 2013, State Farm sent an adjuster to inspect the damage to Plaintiffs' property.

7.      State Farm determined that Plaintiffs had sustained a covered loss to their dwelling.

8.      As set forth in a written estimate provided to the Plaintiffs, Claim Number 23-23G9-452, State Farm's adjuster determined that the dwelling sustained a loss with a replacement cost value ("RCV") of $19,153.82.

9.      In calculating the actual cash value ("ACV") payment obligations to the Plaintiffs, State Farm subtracted from the adjuster's RCV estimate: (1) a prior claim payment for $3,914.94; (2) the $500 deductible; and (3) an additional $8,754.80 for depreciation.

10.      Plaintiffs then received a net ACV payment of $5,984.08 on their claim.

11.      To date, Plaintiffs have not repaired or replaced the damaged property.

12.      The estimate upon which the Plaintiffs' ACV payment was based indicates that State Farm depreciated amounts from certain categories of damaged property.

13.      On or about December 24, 2013, State Farm publicly disclosed the manner in which State Farm depreciates labor in ACV estimates.   In the disclosure, State Farm disclosed that it uses Xactware Solutions, Inc.'s "Xactimate" estimating program in its structural damage repair cost estimates.

2

14.    State Farm does not apply, in the estimating process, depreciation to obvious labor costs standing alone, such as roof tear-off charges or debris removal.

15.    However, Xactimate's unit prices are typically comprised of both embedded material and labor components.

16.    As a result, State Farm will depreciate "embedded labor components" for unit prices in the Xactimate software program.

17.    State Farm is fully capable of depreciating only materials, and not embedded labor components, when estimating structural repairs.

18.    State Farm's existing practice in the State of Arkansas is not to depreciate any labor costs, stand alone or embedded, in estimating homeowner's property losses.

19.    Absent familiarity with proprietary estimating software, it is impossible for consumers to know that State Farm has depreciated "embedded labor costs."

### POLICY TERMS AND CLAIMS SETTLEMENT PRACTICES

20.    The policies of insurance State Farm issued to Plaintiffs and other members of the proposed class provide RCV coverage for both total loss of and partial loss to covered dwellings and other structures.

21.    However, it is State Farm's custom and practice to initially pay policyholders ACV of covered partial loss claims, net of any applicable deductible. In order to qualify for additional payment and recover the full RCV of the covered loss, the insured party must repair, rebuild or replace the damaged property within a specific time frame and submit proof to State Farm that the repair or replacement was timely completed.

3

22.     At all times relevant hereto, State Farm's methodology for calculating ACV has been to determine the cost of repairing or replacing the damaged property then deduct depreciation.

23.     The phrase "actual cash value" is used but not defined in the State Farm policies.

24.     In the context of insurance law, "depreciation" is defined as "[a] decline in an asset's value because of use, wear, obsolescence, or age." BLACK'S LAW DICTIONARY 506 (9th ed. 2009) (emphasis added). Materials used in the repair or replacement of damaged property, *e.g.* roofing shingles, diminish in value over time due to use, wear, obsolescence, and age. As such, those are assets that can be depreciated. In contrast, labor is not susceptible to aging or wearing. Its value does not diminish over time. Conceptually, and practically, depreciation simply cannot be applied to labor costs.

25.     Minnesota statutory law similarly prohibits depreciation of items not adversely affected by age, use or obsolescence, and State Farm's policies have terms requiring conformance to state law.

26.     In order to recover the RCV of their covered loss, Plaintiffs and similar consumers are required to pay out of pocket the difference between the cost of materials and labor necessary to repair or replace the damaged property and the depreciated ACV payment they received from State Farm. In addition, the policyholder must assume responsibility for the deductible.

27.     While an insurer may lawfully depreciate material costs in calculating the amount of an ACV payment owed to an insured, it may not depreciate labor costs. State Farm's failure to pay the full cost of the labor necessary to repair or replace Plaintiffs' damaged property in the ACV payment left Plaintiffs underpaid for their losses.

4

28.     Further, State Farm's practice unfairly encourages policyholders not to repair and replace their property, as they may have insufficient funds to commence repair and replacement if excessive "depreciation" is charged against their claims on top of their deductible obligations. State Farm profits in the event the consumer fails to seek RCV value for his or her claim.

29.     State Farm materially breached its duty to indemnify Plaintiffs and putative class members by depreciating labor costs associated with repairs to Plaintiffs' and putative class members' property in the ACV payments, thereby paying Plaintiffs and putative class members less than what they were entitled to receive under the terms of their insurance contract.

## CLASS ACTION ALLEGATIONS

30.     Pursuant to Minnesota Rule of Civil Procedure 23.01 and 23.02(a) and (b), Plaintiffs bring this lawsuit as a class action on behalf of themselves and all other similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.

31.     The proposed class which Plaintiffs seek to represent is defined as follows:

All persons and entities that received "actual cash value" payments, directly or indirectly, from State Farm for loss or damage to a dwelling or other structure located in the State of Minnesota, where the cost of labor was depreciated.

32.     Plaintiffs limit the class definition as required by applicable statute of limitations and accrual of the statute of limitations as determined by the Court. Plaintiffs reserve the right to amend the class definition of the putative class following discovery.

33.     The members of the proposed class are so numerous that joinder of all members is impracticable. Plaintiffs reasonably believes that hundreds if not thousands of people geographically dispersed across Minnesota have been damaged by State Farm's actions.

5

34.     The names and addresses of the members of the putative class are identifiable through records maintained by State Farm.

35.     Common questions of law and fact exist as to all putative class members and predominate over any questions affecting only individual class members. The questions of law and fact common to the putative class include, but are not limited to:

A.     Whether State Farm's insurance policies allow State Farm to depreciate labor in calculating ACV payments for covered losses;

B.     Whether State Farm's standard form insurance policies are ambiguous concerning the depreciation of labor costs in calculating ACV payments, and if so, how State Farm's insurance policies should be interpreted;

C.     Whether State Farm's depreciation of labor costs in making ACV payments for covered losses constitutes a breach of the insurance contracts issued by State Farm to the Plaintiffs and other putative class members;

D.     Whether Plaintiffs and other putative class members have been damaged by State Farm's breaches, as alleged herein, and if so:

1.     What is the nature and extent of those damages; and

2.     What relief should be awarded to the Plaintiffs and other putative class members;

E.     Whether State Farm engaged in conduct, by act or omission, prohibited by the Minnesota Consumer Fraud Act;

F.     Whether the Plaintiffs and putative class members are entitled to any relief, equitable or monetary, from State Farm;

G.     Whether the Plaintiffs and putative class members are entitled to any relief under the Minnesota Deceptive Trade Practices Act;

H.     Whether the Plaintiffs and putative class members are entitled to a declaration, as well as potential supplemental relief, under the Uniform Declaratory Judgment Act; and

I.     Whether the Plaintiffs and putative classes are entitled to equitable relief in the form of specific performance, unjust enrichment or restitutionary damages.

6

36.     Plaintiffs' claims are typical of the claims of all putative class members, as they are all similarly affected by State Farm's custom and practice concerning labor depreciation. Further, Plaintiffs' claims are typical of the claims of all putative class members because their claims arise from the same underlying facts and are based on the same factual and legal theories. Plaintiffs are no different in any material respect from any other member of the putative class.

37.     Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the putative class. Plaintiffs' interests do not conflict with the interests of the putative class they seek to represent. Plaintiffs have retained counsel who are competent and experienced in class action litigation.

38.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Joining all putative class members in one action is impracticable and prosecuting individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most putative class members, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if putative class members had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Moreover individual litigation could result in inconsistent adjudications of common issues of law and fact.

39.     In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of Plaintiffs and putative

7

class members. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

40.     Class certification is further warranted because State Farm has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## AMOUNT IN CONTROVERSY

41.     Plaintiffs do not have sufficient information to allege herein that the amount in controversy for the proposed putative class members, in the aggregate and for purposes of federal jurisdiction, meets or exceeds the sum or value of $5,000,000, exclusive of interest and costs.  To the extent this action is removed, Plaintiffs put Defendant to its proper burden to determine the amount in controversy derived from labor depreciation, specifically embedded labor depreciation, derived from Xactware/Xactimate's estimating software, for the putative class members during the applicable time periods.

42.     In determining the amount in controversy derived from labor depreciation, it would be erroneous to claim that Plaintiffs simply seek the aggregate amount of depreciated labor for all putative class members over a certain period of time.

43.     Rather, amounts depreciated for labor for ACV payments are sometimes later paid to policyholders upon further adjustment of the claim, for example, if the limits of the policy are reached, if replacement cost coverage is claimed.  Under these scenarios, the total possible amount in controversy for these putative class members would be limited to the lost "time value" of money during the timeframe labor depreciation was improperly withheld – *e.g.*, interest – as opposed to the total amount initially depreciated as labor but subsequently paid.  In other words,

8

Plaintiffs cannot and do not seek to recover the principal amount of labor depreciation on two or more occasions, or to recover amounts above or beyond policy limits, etc.

## COUNT I
## BREACH OF CONTRACT

44.     The Plaintiffs reallege the foregoing paragraphs as if set forth in full here.

45.     State Farm entered into policies of insurance with the Plaintiffs and other members of the putative class.  These insurance policies govern the relationship between State Farm, Plaintiffs and other putative class members, as well as the manner in which claims for covered losses are handled.

46.     The insurance policies at issue were drafted by State Farm and are essentially identical in all respects material to this litigation.

47.     In order to receive ACV claim payments, Plaintiffs and other putative class members must have and did comply with all material provisions and fulfilled their respective duties with regard to their insurance policies.

48.     The policies of insurance State Farm issued to Plaintiffs and other members of the putative class state that in the event of a partial loss State Farm may fulfill its initial contractual obligation to an insured party by paying the ACV of the loss.  At all times relevant hereto, State Farm's custom and practice has been, and is, to make such payments based upon State Farm's calculation of the ACV for the partial loss, less any applicable deductible.

49.     State Farm breached its contractual duty to pay Plaintiffs and putative class members the ACV of their claims by unlawfully depreciating labor costs.

50.     State Farm's actions in breaching their contractual obligations to Plaintiffs and putative class members benefitted, and continued to benefit, State Farm.  Likewise, State Farm's actions damaged, and continue to damage, Plaintiffs and other putative class members.

9

51. State Farm's actions in breaching their contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiffs and other putative class members.

52. In light of the foregoing, Plaintiffs and other putative class members are entitled to recover damages sufficient to make them whole for all amounts State Farm unlawfully withheld from their ACV payments as labor cost depreciation.

## COUNT II
## MINNESOTA CONSUMER FRAUD

53. The Plaintiffs reallege the foregoing paragraphs as if set forth in full here.

54. The Plaintiffs have standing to pursue a claim under Minn. Stat. § 325F.69, subd. 1, pursuant to Minn. Stat. § 8.31, subd. 3a and *Group Health Plan, Inc. v. Phillip Morris, Inc.*, 621 N.W.2d 2, 4 (Minn. 2001).

55. State Farm sells and offers to sell property insurance to the public.

56. State Farm's consumer property insurance is "merchandise" under Minn. Stat. § 325F.68, subd. 2.

57. When selling consumer property insurance products to consumers, State Farm does not disclose that it is depreciating "embedded labor costs" in the manner described herein. State Farm does not depreciate obvious, stand-alone labor costs, and therefore hiding its practice of depreciating other labor costs, including those embedded in estimating software.

58. The chain of causation is not complicated. At all relevant times, State Farm kept secret from consumers that it depreciated labor costs, including when selling and marketing insurance policies. This material omission, as well as the process of concealing depreciation of embedded labor in estimating software, violates the standards of the Minnesota Consumer Fraud Act.

10

59.     Plaintiffs have suffered actual injuries from State Farm's actions and omissions because State Farm has withheld excess depreciation. Policyholders do not have the means to learn of these overcharges. In addition, the practices herein further damage the putative classes in that these practices lower the likelihood of RCV claims under the insurance policies at issue.

60.     These practices are ongoing and systemic, such that injunctive relief is appropriate.

61.     It is in the public's benefit to proceed with a lawsuit to remediate the consequences of State Farm's actions and omissions.

62.     As a result of the State Farm's actions and omissions to the Plaintiffs and the putative classes, and the public at large, Plaintiffs are entitled to recover damages, together with costs and disbursements, including the costs of investigation and reasonable attorneys' fees.

63.     Alternatively, Plaintiffs and the putative classes have been damaged in the aggregate by State Farm's conduct in excess of $100,000 in violation of Minn. Stat. § 325F.69, entitling the claimants to an injunction prohibiting the conduct at issue.

### COUNT III
### MINNESOTA DECEPTIVE TRADE PRACTICES ACT

64.     The Plaintiffs reallege the foregoing paragraphs as if set forth in full here.

65.     As more fully set forth above, State Farm sold insurance policies without disclosing to consumers that State Farm would withhold labor depreciation costs from consumers. State Farm concealed its actions and omissions in the manner described above.

66.     Such actions violated Minn. Stat. §§ 325D.44, subd. 1.

67.     A person who can be damaged prospectively by the deceptive trade practices of another may be granted an injunction under principles of equity and on terms the Court considers reasonable, without proof of monetary damages, loss of profits, or intent to deceive.

68.     Plaintiffs seek, personally and on behalf of the putative classes, together with costs and disbursements, including costs of investigation and reasonable attorneys' fees, all available equitable relief under the law precluding State Farm from engaging in such conduct, including the necessary precautions to police State Farm's related conduct in the future, and all available equitable relief to remedy the conduct complained of herein.

**COUNT VI**
**DECLARATORY JUDGMENT AND SUPPLEMENTAL RELIEF**

69.     The Plaintiffs reallege the foregoing paragraphs as if set forth in full here.

70.     This Court is empowered by Minnesota's Uniform Declaratory Judgment Act to declare the rights and legal relations of parties regardless of whether or not further relief is or could be claimed.

71.     A party may seek to have insurance contracts, before or after a breach, construed to obtain a declaration of rights, status, and other legal relations thereunder adjudicated.

72.     Minnesota's Uniform Declaratory Judgment Act provides for further supplemental relief whenever necessary or proper.

73.     Plaintiffs and putative class members have complied with all relevant conditions precedent in their contracts.

74.     Plaintiffs seek, personally and on behalf of the putative classes, a declaration that their consumer property insurance contracts prohibit deduction of depreciation for labor.

75.     Plaintiffs have suffered current injuries.

76.     Upon obtaining a declaratory judgment, Plaintiffs seeks, personally and on behalf of the putative classes, any and all supplemental relief available under the Uniform Declaratory Judgment Act that the Court deems necessary and proper to the administration of justice, including but not limited to identifying and locating policyholders, and notifying the same of the

12

circumstances complained of and the restoration of their rights and remediation of their losses, all in accordance with the legislative intent set forth by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Brent R. Wilcox and Leah S. Wilcox, on behalf of themselves and others similarly situated, respectfully request that this Court:

1. Certify the classes identified herein or as amended during litigation;

2. Enter a declaratory judgment as requested herein;

3. Enter a preliminary and permanent injunction and equitable relief against Defendant and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the policies, practices, customs, and usages complained of herein;

4. Enter an order that Defendant specifically perform and carry out polices, practices, and programs that remediate and eradicate the effects of its past and present practices complained of herein;

5. Award damages (including interest) to named representatives and certified class members under the terms of their contracts;

6. Award Plaintiffs and the putative class costs, expenses, and disbursements incurred herein, including reasonable attorneys' fees and investigation costs to the extent allowable by law; and

7. Grant such further relief as the Court deems necessary and proper.

Dated:  June 26, 2014            **LARSON · KING, LLP**

By _____

    T. Joseph Snodgrass (#231071)
    Shawn M. Raiter (MN #240424)
    Kelly A. Lelo (#330838)
2800 Wells Fargo Place
30 E. Seventh Street
St. Paul, MN  55101
Tel:  (651) 312-6500
Fax:  (651) 312-6618

***Attorneys for Plaintiffs and Putative Class Representatives***

## Acknowledgment

The undersigned hereby acknowledges that costs, disbursements and reasonable attorney and witness fees may be awarded pursuant to Minn. Stat. §549.211, to the party against whom the allegations in this pleading are asserted.

_____
T. Joseph Snodgrass (MN#231071)
Shawn M. Raiter (MN #240424)
Kelly A. Lelo (MN#330838)

1408688

14

STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF DAKOTA                                 FOURTH JUDICIAL DISTRICT

                                                      Case Type:  Other Civil

---

BRENT R. WILCOX and LEAH S. WILCOX,                Case No. _____
individually and on behalf of all others similarly
situated,

        Plaintiffs,

                                          **AFFIDAVIT OF SERVICE**

vs.

STATE FARM FIRE AND CASUALTY COMPANY,

        Defendant.

---

STATE OF MINNESOTA    )
                         ) ss.
COUNTY OF RAMSEY     )

        Barbara A. Friesen, being first duly sworn, states and alleges that at 12:35 p.m. on June

26, 2014, she served the Summons and First Amended Complaint in the above-entitled action

upon:

        State Farm Fire and Casualty Company
        c/o Commissioner Michael J. Rothman
        Minnesota Department of Commerce
        85 7th Place East, Suite 500
        St. Paul, MN  55101

by personally leaving a true and correct copy thereof with Marcella, receptionist, at the address
listed above.

                                            Barbara A. Friesen

Subscribed and sworn to before
me this 26th day of June 2014.

Notary Public

KIMBERLY A. LEWIS
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2015

1409026

STATE OF MINNESOTA

COUNTY OF DAKOTA

DISTRICT COURT

FOURTH JUDICIAL DISTRICT

Case Type:  Other Civil

BRENT R. WILCOX and LEAH S. WILCOX,
individually and on behalf of all others similarly
situated,

Case No. _____

          Plaintiffs,

vs.

**AFFIDAVIT OF SERVICE**

STATE FARM FIRE AND CASUALTY COMPANY,

          Defendant.

STATE OF MINNESOTA   )
                     ) ss.
COUNTY OF RAMSEY     )

          Barbara A. Friesen, being first duly sworn, states and alleges that on June 26, 2014, she

served the Summons, First Amended Complaint and Notice of Service of Process in the above-

entitled action upon:

          Todd Noteboom
          Stinson Leonard Street LLP
          150 S 5th Street
          Suite 2300
          Minneapolis, MN 55402
          todd.noteboom@stinsonleonard.com

via email and by depositing a true and correct copy thereof in the U.S. Mail with postage prepaid
thereon.

Barbara A. Friesen

Subscribed and sworn to before
me this 26th day of June 2014.

Notary Public

KIMBERLY A. LEWIS
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2015

1409226