UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Brent R. Wilcox et al., | Civil No. 14-2798 (RHK/FLN) |
| *individually and on behalf of* | |
| *all others similarly situated* | |
| | |
| Plaintiff, | |
| | **REPORT AND** |
| v. | **RECOMMENDATION** |
| | |
| State Farm Fire and Casualty Co., | |
| | |
| Defendant. | |

_____

Kelly Lelo and T. Joseph Snodgrass for Plaintiffs.
Todd Noteboom and Jeffrey Mason for Defendant.
_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on Defendant

State Farm Fire and Casualty Company's ("State Farm") motion to dismiss (ECF No. 4). This matter

was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and

Local Rule 72.1. For the reasons set forth below, the Court recommends that Defendant's motion

to dismiss be **GRANTED in part** and **DENIED in part**. Alternatively, the Court recommends that

the question of whether embedded labor costs may be depreciated in an actual cash value insurance

policy be certified to the Minnesota Supreme Court.

## I. FINDINGS OF FACT

This case arises from an insurance contract dispute between Plaintiffs Brent and Leah Wilcox

and Defendant State Farm. *See* First Amended Compl. ¶¶ 3–19, ECF No. 1-2 [hereinafter FAC].

Plaintiffs contracted with State Farm for a homeowners insurance policy ("the Policy") that provided

coverage for certain losses to a dwelling and other structures owned by Plaintiffs. FAC ¶ 3. The

policy provides, in relevant part:

COVERAGE A – DWELLING

1.    A1 – Replacement Cost Loss Settlement – Similar Construction

   a.    We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the Declarations, the damaged part of the property covered under SECTION 1 – COVERAGES, COVERAGE A – DWELLING, . . . subject to the following:

      (1)    until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the Declarations, not to exceed the cost to repair or replace the damaged part of the property;

      (2)    when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the declarations, whichever is less . . . .

Noteboom Decl. Ex. 1, at 28, ECF No. 7. According to State Farm, the Policy indemnifies Plaintiffs for structural damage to their home in a two step manner. First, State Farm pays the "actual cash value"[1] of the loss sustained. Def.'s Mem. in Supp. of Mot. to Dismiss 3, ECF No. 6. Second, State Farm pays any additional necessary costs incurred to repair or replace the damaged property, but only if Plaintiffs actually repair or replace the damaged property. *Id.*

On August 6, 2013, a storm damaged the roof, windows, siding, gutters, and decking of Plaintiffs' home. FAC ¶ 5; Pls.' Opp'n Mem. 2, ECF No. 9. After reviewing the damage, State Farm determined that the incurred damage was covered under the Policy. FAC ¶ 7. State Farm provided Plaintiffs with a written estimate detailing the scope of the damage and costs of repairs. *See* Snodgrass Aff. Ex. A, at 3, ECF No. 10. The estimate listed each individual structural repair and

---

[1]    The term "actual cash value" is not defined in the Policy.

provided Plaintiffs with the net actual cash value of the repairs Plaintiffs were entitled to under the Policy. *Id.*

In order to calculate the actual cash value of the loss sustained by an insured, State Farm first calculates the "replacement cost value" ("RCV") of the damaged property. *See* ECF No. 6 at 4. While the Policy itself does not define RCV, the written estimate provided to Plaintiffs defined RCV as the "[e]stimated cost to repair or replace damaged property." ECF No. 10, Ex. 1 at 4. Here, State Farm determined that the RCV of Plaintiffs' damaged property was $19,153.82. FAC ¶ 8; *see also* ECF No. 10, Ex. A, at 5.

Next, State Farm deducts the pre-loss depreciation of the damaged part of the insured's home. FAC ¶ 9; ECF No. 9 at 3. Again, the Policy does not define "depreciation," but the estimate defines it as "[t]he decrease in the value of property over a period of time due to wear, tear, condition, and obsolescence." ECF No. 10, Ex. A, at 4. State Farm deducted a total of $8,754.80 to account for pre-loss depreciation of Plaintiffs' property. FAC ¶ 9.

Lastly, State Farm deducts any deductible or prior claim payment. FAC ¶ 9; ECF No. 6 at 4. Once these deductions are made from the RCV, the resulting amount represents the actual cash value[2] that is paid to the insured. Here, Plaintiffs were paid a net actual cash value payment of $5,984.08 for the loss they sustained. FAC ¶ 10.

In its estimate, State Farm lists each structural repair and its corresponding replacement cost value. *See* ECF No. 10, Ex. A at 7–12. State Farm uses estimating software called "Xactimate" to calculate how much the RCV of each repair should be depreciated to arrive at a final actual cash

---

[2] The estimate defines "actual cash value" as "[t]he repair or replacement cost of the damaged part of the property less depreciation and deductible." ECF No. 10, Ex. A at 4.

value amount. FAC ¶ 13. According to Plaintiffs, the repair estimates can be organized into three categories: (1) pure labor line items, (2) pure material line items, and (3) combined line items that include both materials and embedded labor costs. ECF No. 9 at 4. While State Farm depreciates pure material line items (e.g., shingles) when calculating actual cash value, it does not depreciate pure labor line items (e.g., detaching a satellite receiver or cleaning the surface of a deck). *Id.* at 7–8; *see also* ECF No. 10, Ex. A, at 7–11. Neither party disputes this practice. State Farm does, however, depreciate combined line items (e.g., repair and replace aluminum siding). ECF No. 9 at 5–6; *see also* ECF No. 10, Ex. A, at 7–10. This practice of depreciating embedded labor costs led to the present dispute.

On June 6, 2014, Plaintiffs filed a class action lawsuit against State Farm for its practice of depreciating embedded labor costs. Notice of Removal 2, ECF No. 1. Plaintiffs do not dispute that State Farm may depreciate the materials used in the repair or replacement of damaged property. FAC ¶¶ 24, 27. However, Plaintiffs assert that State Farm unlawfully depreciates labor costs when it depreciates repair estimates for combined line items that include both labor and material components. *Id.* ¶¶ 25–29. Accordingly, Plaintiffs allege that such practice breaches State Farm's obligation under the Policy to pay them the actual cash value of the damaged part of their home. FAC ¶¶ 44–52. Plaintiffs also seek a declaratory judgment decreeing that labor cost depreciation constitutes a breach of the policy. *Id.* ¶¶ 69–76. Additionally, Plaintiffs claim that this practice violates Minnesota's Consumer Fraud Act and Deceptive Trade Practices Act. *Id.* ¶¶ 53–68.

Pursuant to Federal Rule of Civil procedure 12(b)(6), State Farm now moves to dismiss Plaintiffs' Complaint in its entirety. Def.'s Mot. to Dismiss, ECF No. 4. State Farm argues that Plaintiffs' theory "is fundamentally unsound, incompatible with Minnesota law, and contrary to the

weight of authority from other jurisdictions." ECF No. 6 at 2. Conversely, Plaintiffs claim that they

have pled a prima facie case and, alternatively, request that the question of whether labor may be

depreciated be certified to the Minnesota Supreme Court. ECF No. 9 at 1.

## II. STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion, the court views the pleadings in the light most

favorable to the nonmoving party and treats the alleged facts as true. *See Ossman v. Diana Corp.*,

825 F. Supp. 870, 879–80 (D. Minn. 1993). Conclusions of law made by the nonmoving party,

however, are not "blindly accept[ed]." *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir.

1990). A Rule 12(b)(6) motion to dismiss is granted when the factual allegations, even assumed to

be true, do not entitle that party to relief. *See, e.g.*, *Taxi Connection v. Dakota, Minn. & E. R.R.

Corp.*, 513 F.3d 823, 826–27 (8th Cir. 2008).

## III. LEGAL ANALYSIS

**A.     Breach of Contract Claim**

**1.     The merits of State Farm's motion to dismiss**

The Policy issued to Plaintiffs requires State Farm to pay the actual cash value of a covered

loss suffered by the insured. FAC ¶ 48. By depreciating embedded labor costs in its calculation of

actual cash value, Plaintiffs argue that State Farm breached its contractual duty to pay Plaintiffs

under the Policy. *Id.* ¶ 49. In moving to dismiss Plaintiff's claim for breach of contract, however,

State Farm argues that (1) Plaintiffs falsely equate "actual cash value" with "repair or replacement

cost"; (2) Plaintiffs' theory is contrary to the broad evidence rule; and (3) Plaintiffs' theory has been

rejected by multiple courts. *See generally* ECF No. 6 at 5–16.

The essential question this Court must decide is as follows: may an insurer, when calculating

the "actual cash value" of a covered loss under an indemnity insurance policy, depreciate the costs of labor when the term "actual cash value" is not defined in the policy? The Court answers this question in the negative.

This issue appears to be one of first impression in Minnesota. The parties have not cited, and the Court has not found, any Minnesota case law that directly addresses whether an insurer may depreciate the costs of labor when determining actual cash value. Other courts throughout the country have addressed this specific issue, but these courts have not rendered consistent opinions.

In *Redcorn v. State Farm Fire & Cas. Co.*, 55 P.3d 1017 (Okla. 2002), the Oklahoma Supreme Court addressed the issue of whether an insurance company may depreciate labor costs when calculating actual cash value. In that case, plaintiff's roof was insured through a policy that provided repair and replacement coverage on an actual cash value basis. *Id.* at 1018–19. The policy stated that it would pay the insured the "actual cash value" at the time of loss for damage to roof surfaces, although the term "actual cash value" was not defined in the policy. *Id.* at 1019. After damage occurred to plaintiff's roof, State Farm issued a payment for the actual cash value of the roof, which was calculated by determining the replacement cost, including materials and labor, and depreciating it. *Id.* Plaintiff brought suit, claiming that while an actual cash value valuation allows for the depreciation of materials, it does not allow for the depreciation of labor. *Id.*

The Oklahoma Supreme Court first determined that an actual cash value determination was subject to the "broad evidence rule." *Id.* at 1020. According to the court, the broad evidence rule allows a court to consider all relevant factors and circumstances existing at the time of loss when determining actual cash value. *Id.* Therefore, the court held that the relevant evidence for determining the actual cash value of a roof included the cost of reproduction, the age of the roof, and

the condition in which it was maintained. *Id.* The court concluded in a 5–4 decision that pursuant to the broad evidence rule, a fact-finder was "entitled to consider what the life of the destroyed roof, both materials and labor, would have been." *Id.* at 1021. Thus, State Farm was permitted to depreciate both materials and labor in determining actual cash value. *Id.*

Four justices dissented, opining that although the broad evidence rule allows the court to consider any evidence logically tending to establish the value of the property at the time of loss, labor is not logically depreciable. *Id.* at 1022 (Bourdeau, J., dissenting). Justice Summers, in a separate dissent, observed, "Before the damage the insured had on his house a roof with sixteen-year-old shingles. After the damage the insured is contractually entitled to have on his house sixteen-year-old shingles, or their value in money. He should not bear any of the cost of installing them, because that would deprive him of that for which he contracted—being made whole as if the damage had not occurred." *Id.* at 1023 (Summers, J., dissenting).

Recently, the Arkansas Supreme Court also addressed this issue. In *Adams v. Cameron Mutual Insurance Co.*, 430 S.W.3d 675, 676 (Ark. 2013), the court concluded that an insurer may not depreciate the costs of labor in determining actual cash value when the term is not defined in the policy. In making this determination, the court rejected the majority's position in *Redcorn*, finding the dissenting justices' opinions more convincing. *See id.* at 678. Like Justice Bourdeau, the Arkansas Supreme Court determined it was not logical to depreciate labor when calculating actual cash value. *Id.* at 679.

After reviewing the relevant case law, the Court finds Justice Summers's dissent in *Redcorn* the most logical and persuasive. As Justice Summers observed, an individual who owns a sixteen-year-old roof that is damaged in a storm is entitled to have a sixteen-year-old roof put back on his

house. If it were possible to install used, sixteen-year-old shingles on a house, it would cost the same hourly rate in labor to install the used shingles as it would to install brand new shingles. Thus, depreciating labor in an actual cash value policy does not make logical sense. Although the value of the physical materials used to construct the roof decrease in value over time, the labor used to install such materials does not.

Contrary to State Farm's arguments, this is not inconsistent with the broad evidence rule. Minnesota courts have held that the term "actual cash value" in an insurance policy means "the actual market value at the time of destruction." *N. Nat'l Bank v. N. Star Mut. Ins. Co.*, No. A12-0182, 2012 WL 4052835, at *4 (Minn. Ct. App. Sept. 17, 2012) (quoting *Brooks Realty, Inc. v. Aetna Ins. Co.*, 149 N.W.2d 494, 500 (Minn. 1967)). In *Brooks Realty,* the Minnesota Supreme Court adopted the "broad evidence rule," which allows a court, in determining actual cash value, to "receive any evidence logically tending to establish the actual cash value." 149 N.W.2d at 500. Therefore, under the broad evidence rule, the court should consider "every fact and circumstance which would logically tend to the formation of a correct estimate of the loss," including the "original cost and cost of reproduction; the opinions upon value given by qualified witnesses; the declarations against interest which may have been made by the assured; the gainful uses to which the buildings might have been put; as well as any other fact reasonably tending to throw light on the subject." *Id.* In other words, a court should consider any evidence so long as it tends to establish facts relevant to issue at hand.

In the present case, however, depreciating labor does not help a court determine the actual cash value of the damaged part of Plaintiffs' dwelling. At the hearing, State Farm conceded that it does not depreciate "pure" labor line-items (e.g., detaching and resetting digital satellite system)

because such labor does not add anything of value to the dwelling. The Court concludes that the same logic applies to the labor component of "combined" line-items. The labor to install rain gutters,[3] for example, does not add anything of value to the dwelling. Additionally, State Farm defines "depreciation" as "[t]he decrease in the value of property over a period of time due to wear, tear, condition, and obsolescence." ECF No. 10, Ex. A. Unlike materials, labor is not subject to "wear, tear, condition, or obsolescence." Therefore, the calculation of actual cash value should not include depreciated labor.

Because this Court concludes that an insurer may not depreciate labor costs when calculating "actual cash value," State Farm's motion to dismiss the breach of contract claim should be denied.

### 2.      Certification to Minnesota Supreme Court

Alternatively, this Court recommends that the issue of whether an insurer, when calculating actual cash value, may depreciate labor costs should be certified to the Minnesota Supreme Court. Pursuant to Minnesota Statutes section 480.065:

> The Supreme Court of [Minnesota] may answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of this state.

Minn. Stat. § 480.065, subdiv. 3 (2014).

First, both parties in this case concede that there is no Minnesota appellate authority that has addressed the question of whether an insurer may depreciate labor costs when calculating actual cash value. *See* ECF No. 6 at 11; ECF No. 9 at 35. Second, clarification by the Minnesota Supreme Court on this issue would be determinative of the issues in this case. The merits of Plaintiffs' breach of

---

[3]      Repairing and replacing a rain gutter is a "combined" item that State Farm depreciates in its actual cash value calculation. *See* ECF No. 10, Ex. A at 6.

contract claim depend on how the Policy is interpreted. For example, if the Minnesota Supreme Court were to determine that an insurer may depreciate labor costs when calculating actual cash value, Plaintiffs' claim for breach of contract against State Farm would be moot.

Third, other federal courts, including the Tenth Circuit, have certified this same issue to other state supreme courts. *See Branch v. Farmers Ins. Co.*, No. 00-6385, 2001 WL 1028385 (10th Cir. Sept. 4, 2001) (Tenth Circuit certified question to the Oklahoma Supreme Court); *Adams v. Cameron Mut. Ins. Co.*, No. 1:12-cv-2173, 2013 WL 1876660 (W.D. Ark. May 2, 2013) (Western District of Arkansas certified question to the Arkansas Supreme Court); *Redcorn*, 55 P.3d 1017 (Okla. 2002) (Oklahoma Supreme Court accepted certified question from the Western District of Oklahoma). The issue of whether non-material items may be depreciated seems to be a hot-button issue that Minnesota has yet to weigh in on. It is an issue that could affect numerous Minnesotans that own homeowners insurance policies that use actual cash value as the method of reimbursement.

This Court has certified at least two other insurance questions to the Minnesota Supreme Court in recent years. *See Gen. Cas. Co. of Wisc. v. Wozniak Travel, Inc.*, No. 07-3515 (RHK/AJB), 2008 WL 440747 (D. Minn. Feb. 14, 2008) (certifying question regarding trademark infringement on a third party liability policy); *B.M.B. v. State Farm Fire & Cas. Co.*, No. 01-355 (RHK/AJB), 2002 WL 31728954 (D. Minn. Dec. 4, 2002) (certifying question regarding insurance coverage for injury resulting from nonconsensual sexual contact). It is equally appropriate to certify the present issue.

Due to the fact that there is no controlling Minnesota case law and because there is a split in decisions from other states that have addressed this issue, the Court recommends certifying the following question to the Minnesota Supreme Court:

May an insurer, in determining the "actual cash value" of a covered loss under an indemnity insurance policy, depreciate the costs of labor when the term "actual cash value" is not defined in the policy?

**B.    Consumer Fraud Claim**

Plaintiffs' Complaint also alleges that State Farm violated Minnesota's Consumer Fraud Act ("CFA") by not disclosing to consumers that it depreciates "embedded labor costs" when calculating actual cash value. FAC ¶¶ 53–63. According to Plaintiffs, "State Farm kept secret from consumers that it depreciated labor costs, including when selling and marketing insurance policies." *Id.* ¶ 58.

State Farm moves to dismiss Plaintiffs' CFA claim, arguing that it had no duty to consumers to disclose that it was depreciating labor costs. ECF No. 6 at 18. Plaintiffs, however, claim that State Farm had a duty to not mislead Plaintiffs, which State Farm did by depreciating both labor and materials even though the estimate defined "depreciation" as simply the decrease in the value of property over a period of time due to wear, tear, and obsolescence. ECF No. 9 at 23. The Court agrees with State Farm.

"[A]n omission-based consumer fraud claim is actionable under the CFA when special circumstances exist that trigger a legal or equitable duty to disclose the omitted facts." *Graphic Commc'ns Local 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 850 N.W.2d 682, 695 (Minn. 2014). The CFA prohibits "any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice." Minn. Stat. § 325F.69, subdiv. 1. However, "for an omission-based claim to be actionable, there must be a special circumstance that triggers a duty to disclose the omitted facts." *CVS Caremark Corp.*, 850 N.W.2d at 696. In other words, a claim under the CFA will fail if the plaintiff fails to allege that the defendant had a duty to disclose any of the omitted facts. Therefore:

[A] plaintiff bringing an action under the CFA must plead and prove not only an omission of material fact, but also special circumstances that trigger a duty to disclose. It is not enough that the plaintiff simply alleges that the defendant omitted material information in a transaction. Unlike other state consumer fraud statutes, Minnesota's CFA does not make material omissions actionable.

*Id.*

Plaintiffs' Complaint fails to allege any duty State Farm had to disclose that it depreciated embedded labor costs. While Plaintiffs' Complaint outlines certain alleged omissions made by State Farm regarding the embedded labor costs, Plaintiffs fail to plead any special circumstances that trigger a duty on State Farm to disclose that it depreciated certain labor costs. Under the CFA, Plaintiffs must plead both an omission of a material fact *and* special circumstances that trigger a duty to disclose. Plaintiffs have failed to meet that burden.

Therefore, this Court recommends that State Farm's motion to dismiss Plaintiff's CFA claim be granted and Count II of the Complaint be dismissed with prejudice.

## C.   Deceptive Trade Practices Act Claim

Plaintiffs additionally seek relief under Minnesota's Deceptive Trade Practices Act ("DTPA"). FAC ¶¶ 64–68. Specifically, Plaintiffs claim that State Farm sold insurance policies without disclosing that it would withhold labor depreciation costs from consumers. *Id.* ¶ 65. State Farm, however, argues that like the CFA claim, Plaintiffs' DTPA claim should be dismissed because State Farm had no duty to disclose that it depreciated labor. The Court agrees with State Farm.

While *CVS Caremark Corp.* only addressed whether the CFA requires a plaintiff to plead that the defendant had a duty to disclose certain information, the Court finds its reasoning equally applicable to Plaintiffs' DTPA claim. Under the common law, an omission-based consumer fraud claim "is actionable under special circumstances that trigger a duty to disclose." *CVS Caremark*

*Corp.*, 850 N.W.2d at 696. The Minnesota Supreme Court in *CVS Caremark Corp.* held that the CFA did not eliminate this common law requirement. *Id.* at 695–96. Similarly, nothing in the DTPA indicates that the act abrogated the common law.

Here, State Farm's DTPA claim rests on the allegation that "State Farm sold insurance policies without disclosing to consumers that State Farm would withhold labor depreciation costs from consumers." FAC ¶ 65. Because this claim is based on an alleged omission by State Farm, Plaintiffs must plead that State Farm was under a duty to disclose this information. As discussed above, Plaintiffs failed to plead that State Farm owed them any duty to disclose this information.

Therefore, the Court recommends that State Farm's motion to dismiss Plaintiff's DTPA claim be granted and Count III of the Complaint be dismissed with prejudice.

**D.      Declaratory Judgment Claim**

Finally, Plaintiffs seek a declaratory judgment pursuant to Minnesota's Uniform Declaratory Judgment Act. FAC ¶¶ 69–76. Specifically, Plaintiffs seek a declaration that their consumer property insurance contracts prohibit State Farm from depreciating labor costs. *Id.* ¶ 74. Conversely, State Farm argues that Plaintiffs' claim for declarative judgment should be dismissed because it is duplicative of their breach of contract claim and because Plaintiffs cannot show they are in immediate danger of sustaining direct injury. ECF No. 6 at 26. The Court believes dismissal of Plaintiffs' claim for declaratory relief is premature at this time.

Courts have discretion to grant or deny relief in declaratory judgment actions. *See Ditzler v. Spee*, 180 N.W.2d 178, 180 (Minn. 1970). While courts have dismissed claims for declaratory judgments at the pleading stage when they are duplicative of other claims, *see, e.g.*, *Daum v. Planit Solutions, Inc.*, 619 F. Supp. 2d 652, 656–57 (D. Minn. 2009), dismissal in the present case is

premature prior to the certification of the alleged class. Plaintiffs have alleged that certification of a class is appropriate pursuant to either Federal Rule of Civil Procedure 23(b)(1) (applicable when a defendant may be faced with inconsistent orders if the actions were to proceed in separate, individual suits) or 23(b)(2) (class seeks declaratory or injunctive relief). *See* FAC ¶ 30.[4] Because it is possible that the Court could certify the putative class as one seeking declaratory or injunctive relief under Rule 23(b)(2), the Court concludes that dismissal of Plaintiffs' claim for declaratory relief is premature at this time.

Therefore, the Court recommends denying State Farm's motion to dismiss Plaintiffs' claim for declaratory relief without prejudice.

## IV. RECOMMENDATION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.  To the extent State Farm seeks to dismiss Plaintiffs' claim for breach of contract (Count I), the motion should be **DENIED**. Alternatively, the Court recommends that the following question be certified to the Minnesota Supreme Court:

    > May an insurer, in determining the "actual cash value" of a covered loss under an indemnity insurance policy, depreciate the costs of labor when the term "actual cash value" is not defined in the policy?

2.  To the extent State Farm seeks to dismiss Plaintiffs' claims under the Minnesota Consumer Fraud Act (Count II) and the Minnesota Deceptive Trade Practices Act (Count III), the motion should be **GRANTED** and Plaintiffs' claims **DISMISSED WITH PREJUDICE**;

3.  To the extent State farm seeks to dismiss Plaintiffs' claim for declaratory relief (Count IV), the motion should be **DENIED WITHOUT PREJUDICE**.

---

[4]

Plaintiffs originally brought suit in Minnesota state court, alleging class certification pursuant to Minn. R. Civ. P. 23.02(a) and (b). These sections are essentially equivalent to Fed. R. Civ. P. 23(b)(1) and (b)(2) respectively.

DATED: January 15, 2015                              *s/Franklin L. Noel*
                                                     FRANKLIN L. NOEL
                                                     United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **January 30, 2015**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **January 30, 2015,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.